Joshua S. Lawrence ("the father") appeals from a judgment entered by the Houston Circuit Court ("the trial court") modifying custody of the child born of his marriage to Sarah M. Lawrence ("the mother"). We reverse and remand.
 Procedural History
On May 25, 2005, the trial court entered a judgment divorcing the mother and the father and awarding them joint legal custody of the child with the mother receiving primary physical custody. On July 10, 2007, the father filed a petition to modify custody of the child. The mother filed an answer on August 17, 2007. On August 23, 2007, Crystal Cannon, the child's maternal grandmother, filed a motion to intervene in the proceeding, requesting that the trial court award her legal and physical custody of the child. On September 4, 2007, over the father's objection, the trial court granted the maternal grandmother's motion to intervene.
After an ore tenus hearing, the trial court entered a judgment on October 16, 2007, awarding joint legal custody of the child to the father and the maternal grandmother, with primary physical custody to remain "temporarily" with the maternal grandmother. On October 19, 2007, the father filed a motion for a new trial or, in the alternative, to alter, amend, or vacate the judgment. On October 22, 2007, the trial court entered an amended judgment. The amended judgment clarified that the father and the maternal grandmother "shall exercise joint custody of the child" and that the maternal grandmother shall have "primary, physical custody," subject to the visitation rights of the father and the supervised visitation rights of the mother. The trial court further ordered that if the parties could not work out an agreeable visitation schedule, the father would receive specified visitation, including every other weekend. On October 26, 2007, the trial court denied the father's postjudgment motion. The father timely appealed.
 Discussion
On appeal, the father argues that the trial court erred by awarding joint legal custody and primary physical custody to the maternal grandmother because, he says, the trial court did not find, and the evidence does not sustain a finding, that the maternal grandmother met the applicable legal standard for transferring custody to a nonparent.
"A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a nonparent."Ex parte McLendon, 455 So.2d 863, 865 (Ala. 1984). In the present case, there was no prior judgment removing custody from the father and awarding it to a nonparent. At the time the father filed his petition to modify custody, the mother and the father had joint legal custody of the child, the mother had primary physical custody, and the father had visitation rights. Further, there is insufficient evidence to support a finding that the father had voluntarily forfeited custody of the child. In fact, the mother testified *Page 1072 
that the father had been a good father and had been involved in the child's life since her birth. She testified that the father would normally visit with the child twice a week. The mother testified that she had had primary physical custody of the child up until five months before the trial, at which time she had left the child in the care of the maternal grandmother. The trial was held approximately three months after the father filed his petition to modify custody. Because neither exception to the general rule are present in this case, the presumption in favor of the father is applicable.
 "[A] nonparent seeking custody may overcome the strong presumptive superior right of [a] parent to have custody of his or her child only by presenting `clear and convincing evidence that the parent is so unfit or unsuited for custody that the best interest of the child will be served by granting custody to the third person.' [Ex parte] Terry, 494 So.2d [628] at 630 [(Ala. 1986)]."
G.H.W. v. A.W.C., 792 So.2d 1098, 1102 (Ala.Civ.App. 2000)
In its judgment, the trial court did not mention the standard set out in Ex parte Terry, 494 So.2d 628 (Ala. 1986), or make any express finding that the father was unfit to be entrusted with the care and custody of the child. In C.P. v.W.M., 806 So.2d 395 (Ala.Civ.App. 2001), this court held that when a trial court awards custody to a nonparent in a contest with a parent, the trial court must make an express finding of unfitness. 806 So.2d at 398. Based solely on the trial court's failure to make an express finding of unfitness, the judgment of the trial court is due to be reversed.
We further note that the trial court's judgment is internally inconsistent. By awarding the father joint legal custody, the trial court had to conclude that the father was fit to have custody of the child. See G.H.W., 792 So.2d at 1102
(holding that an award of joint legal custody to the father is "certainly contrary" to a finding that the father is unfit or unsuited for custody). On the other hand, to award joint legal and primary physical custody to the maternal grandmother, the trial court necessarily had to conclude that the father was unfit for custody.
On remand, we instruct the trial court to resolve this ambiguity in its judgment by reviewing the evidence "to make the necessary determination as to whether the standards articulated in Exparte Terry have been satisfied." C.P.,806 So.2d at 398. Although we express no opinion as to how the case should be decided, we remind the trial court that the burden is on the maternal grandmother to prove the father's unfitness by clear and convincing evidence. Ex parte Terry,494 So.2d at 630.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.